**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. AND NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., <br><br>     Plaintiffs, <br><br> v. <br><br> ROWLO, LLC AND ROWLO CAPITAL US, INC., <br><br>     Defendants. | Case No. 1:26-cv- <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax" or "Plaintiffs"), through their undersigned counsel, bring this action against Defendants Rowlo, LLC (d/b/a Wuffes) and Rowlo Capital US, Inc. (collectively, "Wuffes" or "Defendants"). In support of this Complaint, Plaintiffs allege as follows:

**NATURE OF THE ACTION**

1. Nutramax researches, develops, and sells high-quality, innovative health supplements. One of Nutramax's veterinarian-recommended and highly regarded animal health supplement products is Solliquin®. The Solliquin® formulation contains a unique synergistic combination of ingredients that supports

1

calming behavior in dogs and cats, including L-Theanine, extracts of *magnolia* and *phellodendron*, and a whey protein.

2.      Nutramax has numerous patents protecting its inventions related to its health supplement products, including Solliquin®. For example, Nutramax Labs is the rightful owner of United States Patent Nos. 10,335,384 ("the '384 Patent," Exhibit 1) and 12,194,011 ("the '011 Patent," Exhibit 2), which are generally directed to synergistic combinations of L-Theanine, extracts of *magnolia* and *phellodendron*, and/or a whey protein (in the case of the '384 Patent) and their use for reducing, ameliorating, or treating symptoms of anxiety in mammals. Nutramax Vet is a wholly-owned subsidiary of Plaintiff Nutramax Labs and distributes Solliquin® in the United States as the exclusive licensee of the '384 and '011 Patents in the field of animal health supplements.

3.      Wuffes is a competing pet supplement company that, after seeing the success of Nutramax's Solliquin® products, began selling the Wuffes Calming Chews ("Accused Products") to relieve stress and anxiety in dogs. The Wuffes Calming Chews contain the same synergistic combination of ingredients claimed in the '384 and '011 Patents, and Wuffes has marketed them as at least a functional equivalent to Solliquin®.

4.      Wuffes is not authorized, and has never been authorized, to use the '384 and '011 Patents (collectively, "the Asserted Patents"). Thus, Wuffes has infringed

2

and/or continues to infringe, directly and/or indirectly, the Asserted Patents by making, using, selling, offering to sell, and/or importing the Accused Products, and this Complaint is necessary to remedy such infringing conduct. Plaintiffs accordingly file this Complaint seeking a judgment of and relief for Wuffes' infringement of the Asserted Patents.

## THE PARTIES

5.     Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

6.     Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

7.     Defendant Rowlo, LLC is a Wyoming limited liability company with its principal place of business at 1603 Capitol Ave., Ste. 310 A550 Cheyenne, Wyoming 82001. Defendant Rowlo, LLC advertises, promotes, offers for sale, and sells the Accused Product throughout the United States, including in this District.

8.     Defendant Rowlo Capital US, Inc. is a Wyoming corporation with its principal place of business at 1603 Capitol Ave., Ste. 310 A550 Cheyenne,

3

Wyoming 82001. On information and belief, Defendant Rowlo Capital US, Inc. is the sole member of Rowlo, LLC.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

10.     This Court has personal jurisdiction over Wuffes because it has, directly and/or through agents and/or intermediaries, committed acts and/or continues to commit acts of patent infringement, including within Georgia, giving rise to this action, and has established minimum contacts with Georgia such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Wuffes, directly and/or indirectly at least through agents and intermediaries, has committed and/or continues to commit acts of patent infringement in this District by, among other things, making, using, selling, offering to sell, and importing the Accused Products.

11.     On information and belief, Wuffes regularly conducts business in Georgia, including in this District, and purposefully avails itself of the privileges of conducting business in Georgia and this District. In particular, on information and belief, Wuffes, and/or its agents and/or intermediaries, have made, used, imported, offered for sale, sold, and/or advertised—and/or continue to make, use, import, offer

4

for sale, sell, and/or advertise—their products and affiliated services in Georgia and this District, including but not limited to the Accused Products, sufficient to give rise to jurisdiction. On information and belief, Wuffes has placed and/or continues to place Accused Product into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States, including in Georgia, and specifically including in this District.

12.     On information and belief, Wuffes has derived and/or continues to derive substantial revenue from the sale of the Accused Products distributed within Georgia, including within this District, and/or expects or should reasonably expect its actions to have consequences in Georgia. In addition, on information and belief, Wuffes has knowingly induced and/or continues to knowingly induce infringement of the Asserted Patents within Georgia and within this District by offering for sale, selling, and/or contracting with others to market Accused Products with the intent to facilitate infringing use of the products by others and by creating and/or disseminating product information and other materials providing instruction for infringing use. Further, on information and belief, Wuffes' affirmative acts of selling and offering to sell the Accused Products and causing the Accused Products to be manufactured, used, imported, sold, and offered for sale have contributed and/or continue to contribute to customers' and end users' use of the Accused Products, such that the Asserted Patents are directly infringed.

13.     Wuffes' infringing activity has led to foreseeable harm and injury to Plaintiffs.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because Wuffes has committed acts of infringement in this District and has a regular and established place of business in this District.

15.     For example, on information and belief, Wuffes operates a regular and established place of business at 700 Distribution Drive Southwest Atlanta, Georgia 30336. This is the return address listed on the Wuffes shipping label for an order of the Accused Product that was ordered on or around February 24, 2026 from South Carolina. Thus, Wuffes holds itself out to its customers as having a regular and established place of business in Atlanta, Georgia that it uses to store and distribute the Accused Products. On information and belief, Wuffes uses this address at its own discretion and has control over the location, management, and daily supervision of the products in storage.

16.     Also for example, on information and belief, Wuffes has operated and/or continues to operate in this District at least by selling, offering for sale, importing, and/or using the Accused Products in this District. For example, on information and belief, Wuffes has listed and/or lists the Accused Products online and has distributed and/or distributes the Accused Products to customers in this District. Moreover, on information and belief, Wuffes has induced and/or continues

to induce customers in this District to use the Accused Product in an infringing manner at least through advertisements, online product instructions, and product labels distributed in this District.

17. Also for example, on information and belief, Wuffes has operated and/or continues to operate in this District at least by selling, offering for sale, importing, and/or using the Accused Products at physical locations in this District, including at Hollywood Feed stores in Atlanta, Georgia.

18. Also for example, Wuffes has regularly availed itself of this forum when litigating against Plaintiffs and has even requested that another case involving Nutramax and Wuffes be transferred to this District. *Nutramax Labs. Inc. v. Rowlo LLC*, 2:24-cv-00183-ABJ, Dkt. 25 (Defendants' Motion to Transfer Venue) at 8 (D. Wy. Nov. 26, 2024) ("[D]efendants respectfully request that this Court transfer the above-captioned action to the Northern District of Georgia.").

## **FACTUAL BACKGROUND**

19. Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely trusted brands, including but not limited to its Solliquin® product line.

20. Nutramax's health supplement products are utilized to help support joint health, support liver health, support heart health, support intestinal functions, and provide calming support, among other uses.

21. Nutramax's health supplement products are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

22. In fact, the active compounds used in its health supplement products adhere to strict purity and quality standards, which differentiates Nutramax's products from many other products on the market that use inferior ingredients from unverified suppliers. The specific compounds and ingredients used in Nutramax's health supplement products have been researched and tested, and Nutramax has taken substantial steps to ensure that its products are of the highest quality. Using a quality management system, Nutramax maintains strict control over each step of the manufacturing process.

23. Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and devotes significant financial resources each year to marketing as well.

24.     By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Nutramax's products are some of the most well-known and respected in the industry, and many are the most frequently recommended products by veterinarians in their respective categories.

25.     In addition, Nutramax's extensive investment in research and development of innovative health supplement products has led to significant innovation in the health supplement industry. This innovation has been recognized by the U.S. Patent and Trademark Office, which has issued numerous patents to Nutramax that cover various health supplement products.

26.     Among Nutramax's patent-protected products is its Solliquin® line of products. Nutramax's Solliquin® products contain a proprietary combination of L-theanine, *Magnolia* and *Phellodendron* extracts, and whey protein that have been scientifically researched and shown to reduce behaviors associated with environmental stress.

27.     The Solliquin® product line includes the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs under 30 pounds ("Solliquin® for Small/Medium Dogs and Cats") and the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs over 31 pounds ("Solliquin® for Large Dogs").

9

28.     Solliquin® for Small/Medium Dogs and Cats contains a synergistic combination having 35 mg of L-Theanine, 75 mg of extracts of *Magnolia officinalis* and *Phellodendron amurense*, and 25 mg of dried whey protein concentrate (NMXSLQ05®). Solliquin® for Large Dogs contains a synergistic combination having 102 mg of L-Theanine, 225 mg of extracts of *Magnolia officinalis* and *Phellodendron amurense*, and 50 mg of dried whey protein concentrate (NMXSLQ05®).

29.     The effectiveness of this Solliquin® formulation has been extensively studied. Studies[1] show that amounts and ratios of ingredients present in Solliquin® are synergistically effective in modulating at least one neurotransmitter and reducing or ameliorating symptoms of anxiety. Certain levels of effectiveness are true even for formulations that do not include the same amount or ratio of whey protein, or indeed include no whey protein.

---

[1] Examples include Landsberg et al., *The Effects of a Nutritional Supplement (Solliquin) in Reducing Fear and Anxiety in a Laboratory Model of Thunder-induced Fear and Anxiety*, PROCEEDINGS OF THE 11TH INTERNATIONAL VETERINARY BEHAVIOR MEETING (2017); DePorter et al., *Case Report Series of Clinical Effectiveness and Safety of Solliquin® for Behavioral Support in Dogs and Cats*, VETERINARY BEHAVIOR SYMPOSIUM (2016); and the studies reported in the '384 and '011 Patents.

## OVERVIEW OF THE ASSERTED PATENTS

### A.    The '384 Patent

30.    United States Patent No. 10,335,384 is entitled "Compositions Comprising Magnolia, Phellodendron, Theanine, and/or Whey Protein and names Todd Henderson, David Griffin, and David Bledsoe as the inventors. The '384 Patent was duly and legally issued on July 2, 2019. A true and correct copy of the '384 Patent is attached as Exhibit 1.

31.    Plaintiff Nutramax Labs owns, by assignment, all right, title, and interest in and to the '384 Patent, and together with Nutramax Vet holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

32.    Pursuant to a written agreement between Plaintiff Nutramax Labs and Plaintiff Nutramax Vet, Plaintiff Nutramax Vet holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, products practicing the '384 Patent in the field of animal health supplements, as well as the exclusive rights to enforce the '384 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

### B.    The '011 Patent

33.    United States Patent No. 12,194,011 is entitled "Compositions Comprising Theanine, Magnolia, and Phellodendron," and names Todd Henderson,

11

David Griffin, and David Bledsoe as the inventors. The '011 Patent was duly and legally issued on January 14, 2025. A true and correct copy of the '011 Patent is attached as Exhibit 2.

34.     Plaintiff Nutramax Labs owns, by assignment, all right, title, and interest in and to the '011 Patent, and together with Nutramax Vet holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

35.     Pursuant to a written agreement between Plaintiff Nutramax Labs and Plaintiff Nutramax Vet, Plaintiff Nutramax Vet holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, products practicing the '011 Patent in the field of animal health supplements, as well as the exclusive rights to enforce the '011 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

**WUFFES' INFRINGING PRODUCT AND CONDUCT**

36.     Wuffes has made, used, imported, sold, and/or offered for sale in the United States, and/or continues to make, use, import, sell, and/or offer for sale in the United States—and/or has induced and/or continues to induce others to make, use, import, sell, and/or offer for sale in the United States—the Wuffes Calming Chews ("the Accused Products"). For example, Wuffes has offered and/or continues to offer

12

its Wuffes Calming Chews for sale on its own website, through Chewy, through Amazon, and at retail stores, such as Hollywood Feed.

37.   The Wuffes Calming Chews contain a combination of L-Theanine, Relora® (a blend of extracts of *magnolia* and *phellodendron*), and dried whey (which upon information and belief includes a whey protein). Each chew contains 35 mg of L-Theanine, 75 mg of Relora®, and, on information and belief, an amount of dried whey sufficient to provide dogs with a highly digestible source of protein.

38.   On information and belief, these amounts of L-Theanine, Relora® (a blend of extracts of *magnolia* and *phellodendron*), and whey protein in the Wuffes Calming Chews are synergistically effective to modulate one or more neurotransmitters and reduce or ameliorate symptoms of anxiety. For example, in its advertising, Wuffes has equated the formulation in the Wuffes Calming Chews to the formulation in Nutramax's Solliquin® products, relying on a 2017 study involving Solliquin® to claim that the Wuffes Calming Chews effectively reduce anxiety.

**The Research**

🔗  Significantly reduces cortisol levels in both dogs and humans, helping to downregulate the HPA axis and reduce stress (Talbott et al., 2013; Landsberg et al., 2017).

🔗  Improves mood scores by reducing tension, confusion, and fatigue, while increasing vigor and calmness (Talbott et al., 2013).

🔗  Demonstrated behavioral improvements within days of supplementation in dogs with thunderstorm anxiety (Landsberg et al., 2017 – Solliquin Study).

🔗  Reduces hyperactivity and anxiety-like behavior in response to noise stress (Landsberg et al., 2017).

39.   Wuffes' reliance on the "Landsberg et al., 2017 – Solliquin Study" for allegedly proving the effectiveness of Wuffes Calming Chews is tantamount to a

statement by Wuffes that the formulation of its Wuffes Calming Chews is functionally the same as the formulation of Nutramax's Solliquin® product, including the amounts and ratios of L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein that are proven to be synergistically effective in modulating at least one neurotransmitter. Studies[2] show that amounts and ratios of ingredients present in Solliquin®—which on information and belief are the same amounts present in the Wuffes Calming Chews[3]—are synergistically effective in modulating at least one neurotransmitter and reducing or ameliorating symptoms of anxiety.

40.    Further, on information and belief, the amounts of L-Theanine and Relora® (a blend of extracts of *magnolia* and *phellodendron*), in the Wuffes

---

[2] Examples include Landsberg et al., *The Effects of a Nutritional Supplement (Solliquin) in Reducing Fear and Anxiety in a Laboratory Model of Thunder-induced Fear and Anxiety*, PROCEEDINGS OF THE 11TH INTERNATIONAL VETERINARY BEHAVIOR MEETING (2017); DePorter et al., *Case Report Series of Clinical Effectiveness and Safety of Solliquin® for Behavioral Support in Dogs and Cats*, VETERINARY BEHAVIOR SYMPOSIUM (2016); and the studies reported in the '384 and '011 Patents.

[3] According to the product label, the amounts of L-Theanine and extracts of *magnolia* and *phellodendron* in Solliquin® for small dogs (35 mg of L-Theanine and 75 mg of extracts of *magnolia* and *phellodendron*) are the same amounts present in the Wuffes Calming Chews. On information and belief, the amount of whey protein in the Wuffes Calming Chews is believed to be the same and/or functionally equivalent to the amount of whey protein in Solliquin® based at least on Wuffes' own direct comparison to the Solliquin® formulation and Wuffes' statement on its website that there is sufficient dried whey "to provide dogs with a highly digestible source of protein."

14

Calming Chews alone are synergistically effective to modulate one or more neurotransmitters and reduce or ameliorate symptoms of anxiety since levels of effectiveness are true even for formulations that do not include the same amount or ratio of whey protein, or indeed include no whey protein.

41.     This practice of equating Wuffes' copycat products to Nutramax's brand name products is not an isolated incident. Rather, Wuffes has repeatedly relied on Nutramax's brands to advertise its own Wuffes products, even doing so in violation of a previous settlement agreement between the parties. *See Nutramax Labs., Inc. v. Rowlo, LLC*, 1:25-cv-2481-TWT, Dkt. 23 at 13-15 (ruling that Wuffes' keyword advertising practice of using Nutramax's brand names to feature Wuffes products as a search result for Nutramax brands violated the trademark settlement agreement between Nutramax and Wuffes). On information and belief, Wuffes has used and/or continues to use "Solliquin" as a keyword on Amazon and Google.

42.     Even more than equating the formulation of the Wuffes Calming Chews to the formulation of Nutramax's Solliquin®, Wuffes has plainly asserted that the ingredients in the Wuffes Calming Chews—which include L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein in certain amounts—"have been scrutinized in thousands of studies, and are meticulously selected for their ***combined effect*** to reduce stress and promote calm."

15



43.     This direct reference to the "combined effect" of the ingredients similarly amounts to an assertion by Wuffes that the amounts of ingredients in its Wuffes Calming Chews (including L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein) are synergistically effective in reducing symptoms of anxiety.

44.     Wuffes claims on its product label that the formulation used in the Wuffes Calming Chews is "clinically tested" and "promotes relaxation." Wuffes further alleges that its Wuffes Calming Chews are ""[s]cientifically-formulated to promote a sense of relaxation and maintain calmness during environmentally-induced stress."

45.     Moreover, Wuffes has advertised that the reduced symptoms of anxiety that allegedly come with administering the formulation of the Wuffes Calming Chews can be attributed, at least in part, to the fact its formulation "[s]upports mood

16

balancing brain chemicals" and "[b]oosts natural calming neurotransmitters, including serotonin and GABA."

46. And, separate from its statement about the "combined effect" of "the ingredients" (which includes both active and inactive ingredients), Wuffes has also pointed to the synergistically effective amounts of *active* ingredients in the Wuffes Calming Chews (which includes L-Theanine and extracts of *magnolia* and *phellodendron*) when stating that the Wuffes Calming Chews are "[f]ormulated with active ingredients at ***meaningful doses***" and instructs users to administer the Wuffes Calming Chews at dosages that will be effective.

47. Individually, and taken together, the statements provided above are an explicit acknowledgement by Wuffes that the amounts and ratios of L-Theanine,

17

extracts of *magnolia* and *phellodendron*, and whey protein in the Wuffes Calming Chews are synergistically effective to modulate at least one neurotransmitter (e.g. serotonin and GABA) and reduce symptoms of anxiety, such as stress.

48. On February 25, 2026, Plaintiffs' counsel sent correspondence to Wuffes and Wuffes' counsel, informing them that Wuffes infringes the '384 and '011 Patents by making, using, importing, selling, and/or offering for sale in the United States the Wuffes Calming Chews. Plaintiffs requested that Wuffes cease and desist all infringing activity.

49. Wuffes' counsel responded to Plaintiffs letter on March 11, 2026, thereby acknowledging receipt. The letter did not dispute that Wuffes had sold Calming Chews that included the ingredients identified above.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

50. Wuffes has infringed and/or continues to infringe, directly and/or indirectly, at least one claims of each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. §§ 271(a), (b), (c) and/or (f), including but not limited to one or more of making, using, selling, offering for sale, importing, exporting and/or inducing and/or contributing to infringement by others, the Accused Products in this District and elsewhere in the United States.

51. As a result of Wuffes' infringement, Nutramax has suffered and/or will continue to suffer harm in the form of reasonable royalties and/or lost profits.

18

Nutramax seeks damages for infringing acts beginning as early as six years before the filing of this Complaint.

52. Nutramax also seeks an injunction prohibiting further acts of infringement. Each of Wuffes' acts of infringement has caused and/or will continue to cause Nutramax irreparable harm for which there is no adequate remedy at law. Such injunctive relief would not disserve the public interest, and is warranted when considering the balance of the equities.

53. Wuffes had actual or constructive knowledge and notice of infringement as to each of the Asserted Patents. For example, Wuffes is a direct competitor of Nutramax in the pet supplement space. As such, Wuffes knew, should have known, or was willfully blind to the existence of the Asserted Patents at the time of Wuffes' infringing acts.

54. That Wuffes had, and continues to have, knowledge of the Asserted Patents is also evident from the fact that Wuffes' materials make clear that they were and are aware of Nutramax's Solliquin® line of products and that the Solliquin® line of products includes a proprietary formulation. For example, not only has Wuffes relied on a study that administers the Solliquin® formulation as an example of a study supporting the effectiveness of its Wuffes Calming Chews, but it went so far as to call out Solliquin® by name when citing this study on the Wuffes website ("Landsberg et al., 2017 – Solliquin Study"). This study makes clear that Solliquin®

19

contains a proprietary blend of L-theanine, extracts of *Magnolia officinalis* and *Phellodendron amurense*, and a whey protein concentrate. Moreover, on information and belief, Wuffes' use of "Solliquin" as a keyword on Google and Amazon for its own products further confirms Wuffes' was familiar with Solliquin® and even wanted customers to believe it is equivalent to the Wuffes Calming Chews.

55.    Further, the Solliquin® products are marked with the patent numbers of the Asserted Patents. Thus, Wuffes' knowledge of and reliance on the Solliquin® line of products is further evidence that Wuffes had and continues to have actual or constructive knowledge of the Asserted Patents.

56.    Wuffes' infringement of the Asserted Patents has been, and/or continues to be, willful because Wuffes has committed and/or continues to commit acts of infringement even though Wuffes knew or should have known that its actions constitute an unjustifiably high risk of infringement. For example, not only did Wuffes have knowledge of the Asserted Patents and know the Asserted Patents cover Solliquin®, as noted above, but Wuffes also knew or should have known that its actions related to the Wuffes Calming Chews constitute an unjustifiably high risk of infringing those Asserted Patents because Wuffes itself has equated the formulation of the Calming Chews to the patented formulation of Solliquin®.

57.    Wuffes' infringement of the Asserted Patents has been, and/or continues to be, without permission, consent, authorization or license.

20

## COUNT I: INFRINGEMENT OF THE '384 PATENT

58.     Plaintiffs incorporate the allegations of all the foregoing paragraphs as if fully restated herein.

59.     Wuffes has infringed, contributed to the infringement of and/or induced infringement—and/or continues to infringe, contribute to the infringement of and/or induce infringement—of the '384 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '384 Patent.

60.     The Accused Products directly infringe, literally and/or through the doctrine of equivalents, one or more claims of the '384 Patent under 35 U.S.C. § 271(a).  Wuffes has made, used, sold, offered for sale, and/or imported into this District and elsewhere in the United States—and/or continues to make, use, sell, offer for sale, and/or import in this District and elsewhere in the United States—the Accused Products and thus has directly infringed and/or continues to directly infringe claims of the '384 Patent.

61.     As illustrated in Exhibit 3, which is incorporated here by reference, the Accused Products infringe at least Claims 1, 3-7, and 9-11 of the '384 Patent because they include the claimed synergistic combination of ingredients recited in the Claims.

62.     Wuffes also has indirectly infringed and/or continues to indirectly infringe claims of the '384 Patent, as provided in 35 U.S.C. § 271(b) by inducing infringement by others, such as Wuffes' distributors, retailers and customers, in this District and elsewhere in the United States. For example, Wuffes' retailers have directly infringed and/or continue to directly infringe through their sale of the Accused Products, and their customers have directly infringed and/or continue to directly infringe through use of the Accused Products. Wuffes has induced and/or continues to induce this direct infringement through its affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Accused Products, and providing instructions, documentation, marketing, advertisements and other information to retailers and customers suggesting they use the Accused Products in an infringing manner. As a result of Wuffes' inducement, Wuffes' customers have used and/or continue to use the Accused Products in the way Wuffes intended and/or still intends, and have directly infringed and/or continue to directly infringe the '384 Patent. Wuffes has performed and/or continues to perform these affirmative acts with knowledge of the '384 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '384 Patent.

63.     Wuffes also has indirectly infringed and/or continues to indirectly infringe claims of the '384 patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and

elsewhere in the United States. Wuffes' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products, and causing the Accused Products to be manufactured, used, sold and offered for sale have contributed to and/or continue to contribute to Wuffes' retailers and customers use of the Accused Products, such that the '384 Patent has been and/or continues to be directly infringed.  The Accused Products are material to the invention of the '384 Patent and are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Wuffes be especially made or especially adapted for use in infringement of the '384 Patent. Wuffes has performed and/or continues to perform these affirmative acts with knowledge of the '384 Patent and with intent, or willful blindness, that they cause the direct infringement of the '384 Patent.

64.    Wuffes has been aware of the '384 Patent and its infringement thereof at least as of February 25, 2026.

65.    Wuffes' acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from Wuffes the damages sustained by Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

66.    Plaintiffs provide the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Plaintiffs reserve the right to present additional or

23

alternative explanations of infringement for the claim and functionalities and for other claims and functionalities of the Accused Product.

## **COUNT II: INFRINGEMENT OF THE '011 PATENT**

67.    Plaintiffs incorporate the allegations of all the foregoing paragraphs as if fully restated herein.

68.    Wuffes has infringed, contributed to the infringement of and/or induced infringement—and/or continues to infringe, contribute to the infringement of and/or induce infringement—of the '011 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '011 Patent.

69.    The Accused Products directly infringe, literally and/or through the doctrine of equivalents, one or more claims of the '011 Patent under 35 U.S.C. § 271(a).  Wuffes has made, used, sold, offered for sale, and/or imported into this District and elsewhere in the United States—and/or continues to make, use, sell, offer for sale, and/or import in this District and elsewhere in the United States—the Accused Products and thus directly infringes claims of the '011 Patent.

70.    As illustrated in Exhibit 4, which is incorporated here by reference, the Accused Products infringe at least Claims 1-10 and 13-20 of the '011 Patent because they include the claimed synergistic combination of ingredients recited in the Claims.

71.     Wuffes also has indirectly infringed and/or continues to indirectly infringe claims of the '011 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Wuffes' distributors, retailers and customers, in this District and elsewhere in the United States. For example, Wuffes' retailers have directly infringed and/or continue to directly infringe through their sale of the Accused Products, and their customers have directly infringed and/or continue to directly infringe through use of the Accused Products. Wuffes has induced and/or continues to induce this direct infringement through its affirmative acts of manufacturing, selling, distributing and/or otherwise making available the Accused Products, and providing instructions, documentation, marketing, advertisements and other information to retailers and customers suggesting they use the Accused Products in an infringing manner. As a result of Wuffes' inducement, Wuffes' customers have used and/or continue to use the Accused Products in the way Wuffes intended and/or still intends, and have directly infringed and/or continue to directly infringe the '011 Patent. Wuffes has performed and/or continues to perform these affirmative acts with knowledge of the '011 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '011 Patent.

72.     Wuffes also has indirectly infringed and/or continues to indirectly infringe claims of the '011 Patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and

elsewhere in the United States. Wuffes' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products, and causing the Accused Products to be manufactured, used, sold and offered for sale have contributed to and/or continue to contribute to Wuffes' retailers and customers use of the Accused Products, such that the '011 Patent has been and/or continues to be directly infringed. The Accused Products are material to the invention of the '011 Patent and are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Wuffes be especially made or especially adapted for use in infringement of the '011 Patent. Wuffes has performed and/or continues to perform these affirmative acts with knowledge of the '011 Patent and with intent, or willful blindness, that they cause the direct infringement of the '011 Patent.

73. Wuffes has been aware of the '011 Patent and its infringement thereof at least as of February 25, 2026.

74. Wuffes' acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from Wuffes the damages sustained by Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

75. Plaintiffs provide the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Plaintiffs reserve the right to present additional or

26

alternative explanations of infringement for the claim and functionalities and for other claims and functionalities of the Accused Products.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for any and all issues triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask the Court for an order granting the following relief:

A.   A judgment in favor of Plaintiffs that Wuffes has infringed, either literally and/or under the doctrine of equivalents, the '384 and '011 Patents;

B.   An award of damages adequate to compensate Nutramax for infringement of the Asserted Patents by Wuffes, in an amount to be proven at trial, including supplemental post-verdict damages together with pre-judgment and post-judgment interest and costs, until such time as Wuffes ceases its infringing conduct;

C.   A judgment and order finding that Wuffes' infringement has been willful;

D.   A permanent injunction prohibiting Wuffes from further acts of infringement;

E.   Enhanced damages for willful infringement pursuant to 35 U.S.C. § 284;

F.   A judgment and order declaring that this is an exceptional case within the meaning of 35 U.S.C. § 285;

G.   The costs of this action as well as reasonable attorneys' fees provided by 35 U.S.C. § 285; and

H.   All other relief, in law or equity, to which Nutramax is entitled.

Dated: March 31, 2026

Respectfully Submitted,

*/s/ Jason D. Rosenberg*
Jason D. Rosenberg (GA Bar 510855)
jason.rosenberg@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7700

Natalie C. Clayton*
natalie.clayton@alston.com
Madeline E. Byrd*
maddy.byrd@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Pro hac vice applications forthcoming

*Counsel for Plaintiffs Nutramax
Laboratories, Inc. and Nutramax
Laboratories Veterinary Sciences, Inc.*

28